[Crim. No. 757.   Fourth Dist.   Oct. 23, 1951.]

THE PEOPLE, Respondent, v. IVAN ELLSWORTH
FREEMAN, Appellant.

46

Quentin Whelan for Appellant.

Edmund G. Brown, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged in four counts with violations of section 600.5 of the Penal Code in setting four fires on October 13, 1950, in the vicinity of Julian, in San Diego County. The first two fires were started at the foot of Banner Grade on Highway 78, about 6 miles east of Julian. The other two were started near Highway 79, about 3 and 4½ miles, respectively, south of Julian. A jury found the defendant guilty and he has appealed from the judgment and from an order denying his motion for a new trial.

The appellant was employed on a ranch some 10 miles southerly from Julian. On October 11, he and his wife were visited by a friend named Kinsman, who had driven out from Kansas. On the evening of October 12, the three drove to Tecate, Mexico, in Kinsman's 1949 Buick sedan for the purpose of showing him a good time. Between 9 and 10 p.m. they left the car at the international line and walked to a roadhouse in Tecate, a 20-minute walk. Almost immediately the appellant left and Kinsman followed him to an adjoining hotel, where the appellant rented a room. Kinsman returned to the café and sat there with the appellant's wife. When the café closed, about 1 or 2 o'clock a.m., Kinsman and Mrs. Freeman returned to the car and waited for the appellant. He appeared about 4 o'clock in the morning and they returned to the ranch, arriving there between 6 and 6:30. They all had breakfast and went to bed. Shortly thereafter, the appellant got up and drove Kinsman's car into Julian, the keys having been left in the switch. At 8:25 a.m. he arrived at a service station in Julian and left 5 or 10 minutes later, having had the gas tank filled.

At 8:45 a.m. Mrs. Freeman awakened Kinsman and told him that the appellant had left in his car. The appellant had never driven that car before, and had not asked permission to use it. The appellant owned a jeep but he had taken the keys with him. About 10:30 a.m. Kinsman unsuccessfully attempted to start the jeep by putting a wire around the ignition switch. He finally succeeded in starting it by picking the lock, and around noon he and Mrs. Freeman started for Julian. As they reached Highway 79, shortly after noon, they saw the smoke from the fire on Banner Grade. They proceeded into Julian where they tried, without success, to find the appellant. They started back to the ranch and at Mosler's place, about 2 miles south of Julian, the fire had reached Highway 79. They stopped and watched the firemen trying to save Mosler's house. They remained there about an hour, and between 1:15 and 2:00 p.m. the appellant drove up in the Buick. He had been drinking and seemed excited about getting away from the fire. They parked the jeep and all three drove in the Buick to Julian and thence to Pine Hills, 5 miles away. They then returned to Julian and finally back to Mosler's place.

They then proceeded toward the ranch, the appellant driving his jeep and Kinsman and Mrs. Freeman following in the Buick. As they proceeded south on Highway 79 Kinsman and

Mrs. Freeman could at times see the appellant in the jeep ahead of them. About 3 miles south of Julian, when the Buick was from 150 to 200 feet behind the jeep, Kinsman saw the appellant make a throwing motion with his hand, in front of his face. When the Buick reached the point where this had occurred Kinsman saw a fire just starting on the left side of the highway. He stopped to put it out, but a tanker came around the corner just then and the fire was put out with a hose. It was a small grass fire which had started 4 feet from the edge of the road and was spreading rapidly.

Kinsman and Mrs. Freeman then proceeded after the appellant, driving at a faster pace than before. About a mile and a half farther on they saw another fire at the side of the road, which Kinsman put out. This fire was about the same size as the other one but was not spreading so rapidly. A highway patrol officer passed the appellant just south of the point of the second fire, and arrived at the fire as Kinsman was putting it out. There was ample evidence that these two fires could not have been spot fires caused by the larger fires on Banner Grade, and that no one else had been there during the time these fires must have started.

Kinsman and Mrs. Freeman went on to the ranch where they found the appellant lying down in the house. Kinsman asked him if he had started any fires and if he had thrown a cigarette out. He denied having done so, saying he had not smoked all the way from Julian because he had no matches. Kinsman told him that their two cars were the first ones through, which left him in a bad spot, and that there would be an investigation. The appellant replied: "I am not guilty." Kinsman asked him what he had been doing that day and he replied that he had gone to Julian to service the car, saying nothing else as to where he had been or what he had done. This was the same story he had told his wife at Mosler's place. Kinsman did not pursue the matter further for fear of starting an argument.

With respect to the two larger fires on Banner Grade two men testified that on that day they were driving from the Salton Sea to Julian along Highway 78. As they neared the foot of Banner Grade they were passed by a late model car going in the opposite direction at a fast speed. Shortly thereafter, they observed a fire burning very rapidly up the hill. They stopped and reported it and a telephone call to a forest ranger was put in and received at 11:34 a.m. As these men proceeded up the grade they observed a second fire, which was

separate and distinct from the first. The nearest edge of the first fire was about 5 feet from the road. Forest rangers and fire equipment arrived within a few minutes. The two fires had not been in progress long when the first ranger arrived. The fires spread and in a period of 49 minutes reached Highway 79 to the south of Julian. It destroyed a half dozen cabins lying between the point where the fires originated and Mosler's ranch on Highway 79. The fire covered an area of 1½ miles from north to south, and about 2½ miles from east to west.

During an investigation which followed, the charred remnants of ordinary kitchen matches were found at the point where all of the fires originated, with the exception of the second fire at the Banner Grade. There was ample evidence showing that these matches had not been dropped after the fires started to burn; that in the two larger fires there was first a small smouldering fire which increased in intensity as it spread and fanned out; and that none of the fires could have caused any of the others. There was testimony by expert witnesses, skilled in the investigation of such fires, who expressed the opinion that these fires were started by ordinary kitchen matches, giving substantial reasons for that opinion. Their testimony was also to the effect that their investigations had eliminated all other possible or reasonable causes for the fires, and the opinion was expressed that these fires disclosed a common mode of operation, having been all started close to the highway within a short radius and comparatively short time, and since they were obviously started by throwing lighted matches from a passing car. Based upon all of the circumstances, the opinion was expressed that one person had set all four of these fires.

The appellant contends that the evidence is insufficient to support the verdict in that it failed to establish that the lands burned over were the property of another, as required by the code section; that these fires were of incendiary origin; that he wilfully and feloniously burned anything; and that he was in any way connected with the two fires on the Banner Grade.

While there is no direct evidence that the appellant did not own the various lands over which these fires burned, the evidence, as a whole, with the reasonable inferences therefrom, is sufficient to support the implied finding to that effect. It would have been a simple matter for him to have brought out the fact that he owned these lands if this had been true. There was evidence that he was a ranch hand employed on a

ranch which was some 15 or 20 miles away, by road, from the point where the two fires on the Banner Grade started; that these two fires burned some half dozen cabins between that point and Mosler's place; and that these cabins and several other properties in the burned area were owned by persons other than the appellant. The ranch where the appellant was employed was some 6 or 8 miles from the scene of the two fires which were started on Highway 79, and from the evidence as a whole the jury was entitled to infer that in starting these fires the appellant was also dealing with property which he did not own.

It cannot be held that the evidence was insufficient to show the incendiary origin of the fires, that they were wilfully and maliciously set by the appellant, or to connect him with the two fires on the Banner Grade. The fact that four fires were set within a short time in inhabited territory, and under conditions inevitably making such a fire dangerous to life and property, is sufficient to show the necessary wilfulness and maliciousness, these being questions of fact for the jury. It rather clearly appeared that the four fires were started in the same general manner, by throwing lighted matches from a car passing along the road. They were all started close to the roads and only a few miles apart, two at one place at one time and the other two close together a couple of hours or so later. Other causes of the fire were pretty well excluded by the evidence, and it was shown that the appellant was present at the time the two fires on Highway 79 must have started, and that no one else was there at the time. While there was no direct evidence that he was seen on the Banner Grade at the time those fires started, a man in a nearly new passenger car was seen rapidly leaving that point immediately after the fires must have been started.

In this connection, the conduct of the appellant and the inconsistent and contradictory statements made by him must also be considered. While there was testimony that he had not quarreled with Kinsman or his wife, the evidence strongly indicated that some unusual situation existed which had an important bearing on his actions. On the night before, he and his wife took his friend Kinsman to Tecate for the purpose of showing him a good time. The appellant left the others almost immediately and went to a hotel room, staying there several hours. Although Kinsman knew where he was he did not attempt to get him when the café closed, but went to the car with Mrs. Freeman where they waited until the appellant

appeared two or three hours later. Shortly after the others had gone to sleep the next morning he took Kinsman's car, also taking the keys to his own jeep, and disappeared for some six hours. He told the investigators that he could not sleep and had gone for a ride; that he went to Julian and filled the tank of the car with gasoline; that he then drove to Escondido, taking about an hour on the trip; that he called on a friend, Mrs. Stitts, at her home in Escondido staying about half an hour; that he then drove back to Julian, which took about an hour; and that as he passed through Ramona on the way he saw the smoke from these fires at 11 o'clock. It was clearly established that the first of these fires did not start until about 11:30 a.m. At another time the appellant told the investigators that he had also taken Mrs. Stitts for a ride. There was an hour or an hour and a half discrepancy in the way the appellant accounted for his time before he rejoined his wife and Kinsman near Julian. It was shown by the amount of gasoline left in the tank of the Buick that he had driven considerably farther than he said he had. The difference in the amount of gasoline was about the amount that would have been used if the appellant, in addition to his trip to Escondido, also went down the Banner Grade and returned to Julian by another road. When the appellant first returned to Julian about 1:30 p.m. he saw Deputy Sheriff Grand, who told him that his wife was looking for him. The appellant told the investigators that Grand also then told him that there were two "set" fires on the Banner Grade. There is no other evidence that Grand had told him such a thing, and no one knew at that time whether or not the fires had been set. Mrs. Stitts, who testified for the appellant, first told the investigators that the appellant came to her home between 9 and 10 o'clock on that day, that he stayed about half an hour, and that she did not leave the house. She later changed this story and said that she had gone for a ride with the appellant in the nearly new Buick he was driving. Two friends of the appellant, Mr. and Mrs. Campbell, who live near the foot of the Banner Grade, testified in his behalf saying that they saw the smoke from the Banner Grade fire at 10:45 a.m. and that later, after they had lunch, they went to the scene of the fire. While they were very positive as to the time they first saw the fire the evidence conclusively shows that no such fire existed at that time.

It cannot be held that the evidence as a whole is insufficient to support the verdict and the implied findings as to all of

the elements questioned by the appellant. The circumstantial evidence against the appellant was strong and any reasonable doubt seems to have been removed by the evidence of his own actions and statements. The record confirms the conclusions reached by the jury.

It is next contended that the court was guilty of prejudicial misconduct in asking certain questions of witnesses and in making one remark. On cross-examination of one witness the defense had brought out that the witness knew of cases where fires had been started by the action of sun upon glass. Later, the court asked the witness whether he had heard of four fires being started within a period of three hours in the same area by glass, and he replied that he had not. The court asked another prosecution witness whether his record showed that there was any lightning in this area on that day. In another instance, the appellant's employer testified that the appellant left the ranch about 7:30 a.m. on the day in question, but said he had not looked at his watch. The court asked him if he was accustomed to telling time from the sun and whether he could approximate the time without a watch. He said that he could. These questions were asked for the purpose of bringing out the facts and no prejudicial misconduct appears. In another instance, the appellant on cross-examination had testified that he remembered everything that had occurred at Tecate, on the night before the fires, except when he was asleep. The prosecution asked a number of questions as to whether he remembered certain things that had then occurred. In reply to an objection to one question the court said, among other things: "He testified he remembers everything except when he was asleep and we intend to find out if he does remember." Later, defense counsel cited this as misconduct and as a ground for a mistrial. In denying the motion the court explained that its purpose had been merely to have all of the facts brought out. No misconduct appears, although the language used is not to be commended. Moreover, the jury was instructed to disregard any remarks made by the court which might seem to indicate any expression of opinion on its part.

It is next contended that the district attorney was guilty of misconduct in asking one question of a defense witness, and in making three comments in his argument to the jury. The question referred to was apparently asked in good faith. While the record of the preliminary hearing did not sustain the district attorney's contention in this regard, it was

fully sustained by other evidence which was produced. The remarks made to the jury of which complaint is made constituted legitimate argument and neither misconduct nor prejudice appears. ■ The district attorney is also charged with misconduct in that during his argument to the jury he lighted several kitchen matches and threw them toward the back of the courtroom. This was done for the purpose of showing that wooden matches so thrown would continue to burn. The only objection raised is that the conditions in the courtroom were entirely different from those in the mountains, where these fires were started, and that the experiment was performed before defense counsel could make an objection. The experiment was made for illustrative purposes, no claim was made that the conditions were the same, and no prejudicial error appears.

■ A number of errors are assigned in connection with the admission of evidence. It is first contended that the testimony of a hotel clerk in Tecate, that when the appellant rented a room on the night of October 12 he asked for a ''woman,'' should not have been admitted; that it was evidence of another offense; and that its only purpose was to prejudice the jury. The appellant had testified that he remembered everything that transpired that night except when he was asleep. While his memory was being tested in this regard, he denied that he had asked for a ''woman'' on that occasion. The questioned evidence was brought out in rebuttal. It was admissible in this connection, and it also had a bearing on the matter of appellant's frame of mind and his peculiar conduct the next day.

■ It is contended that the court erred in admitting the testimony of two expert witnesses. It is argued that the cause of fire is a matter of common knowledge and not a question for experts, and that some of the data these experts used was gathered at points other than Julian. This contention is without merit. While the cause of some fires may be a matter within the realm of common knowledge, the situation here involved considerations which called for the evidence of qualified experts.

It is contended that the court erred in refusing to let a defense witness testify as to seeing spot fires in the Julian area. This witness was prevented from testifying as to seeing spot fires created by other fires at other times, but not from testifying as to anything seen on this occasion or under the conditions then existing.

█ It is further contended that the court erred in permitting the showing of motion pictures during the trial. These pictures showed an experiment which had been conducted by certain officers and fire experts in the hills near San Diego. In this experiment 11 lighted matches were tossed to the side of the road from a jeep traveling at various speeds, and the pictures showed that only one of these matches did not remain lighted and start a fire. The condition as to dry grass was shown to be quite similar to that existing where the fires in question were started, but it was admitted that the wind and temperature conditions may not have been identical. The dissimilarity in the conditions was a matter for argument to the jury and there is nothing in the record to indicate that the court abused its discretion in permitting the results of the experiment to be shown.

█ Finally, it is contended that the court erred in connection with taking the jury to view the area where this fire occurred. It is argued that the court permitted the prosecution's chief witnesses to ride in the bus with the jury, that in going to the scene the jury was taken through an area burned over by a much larger fire which had occurred in the summer of 1950, and that the court failed to have the jury inspect some of the things relied upon by the defense. In going to the scene of these fires the bus necessarily passed through the other burned area, but nothing in the record indicates that any prejudice resulted therefrom. The jury was taken out to view the premises because the judge felt, and believed that the jury felt, that it was impossible from the testimony to get a correct idea as to the various distances between these fires, their relation to each other, and what could be seen from various points mentioned by the witnesses. To this end the jury was taken only to certain places, including the spots where the fires originated and a high point from which the distances and relation between the fires could be clearly seen. There was no error in refusing to take the jury to other places to view certain incidental matters concerning which the defense witnesses had testified. The only time when the three witnesses referred to rode in the bus with the jury was while the bus was going from one of the spots to another, during which the judge and the three witnesses sat on the rear seat of the bus and apart from the jury. We are unable to find any prejudicial error in this connection.

In view of the evidence, including the contradictory statements of the appellant and his unsatisfactory explanation of

many of his actions, it seems impossible that any of the matters complained of could have affected the verdict. The cause was fairly tried, the appellant was ably defended, and no miscarriage of justice is disclosed by the record.

The judgment and order are affirmed.

Griffin, J., concurred.

A petition for a rehearing was denied November 5, 1951, and appellant's petition for a hearing by the Supreme Court was denied November 19, 1951. Carter, J., and Schauer, J., voted for a hearing.