**STATE of Iowa, Appellee,**

v.

**James Charles PEPPLES, Appellant.**

No. 59414.

Supreme Court of Iowa.

Feb. 16, 1977.

Curtis A. Ward and Pat W. Brooks, of Mowry, Irvine & Brooks, Marshalltown, for appellant.

Richard C. Turner, Atty. Gen., Richard H. Doyle IV, Asst. Atty. Gen., and Carl D. Baker, County Atty., for appellee.

Heard by MOORE, C. J., and MASON, REYNOLDSON, HARRIS and McCOR-MICK, JJ.

McCORMICK, Justice.

This appeal from a conviction of second-degree murder raises questions concerning admissibility of evidence, prosecutor conduct in final argument, and the court's instructions. We find no reversible error and affirm the trial court.

Most of the essential facts are not in dispute. Defendant James Charles Pepples resided with his wife Karen in a farm home near Melbourne in Marshall County. Although the couple had previously been separated for several months, they had reconciled about three weeks before the events involved here. Even after the reconciliation, defendant sometimes stayed away from home overnight.

Karen Pepples was engaged in an extramarital affair with Thomas Kooiker, a college student, which had begun several months earlier.

By prearrangement, on Friday, January 23, 1976, Kooiker met Karen Pepples at her place of employment. When she finished work, he accompanied her to her home and remained there while she left to attend a dinner. She assumed her husband would not be home that night. She returned home about 1:45 a. m. Shortly thereafter, she went to bed. She said she awakened later and observed Kooiker in bed with her.

Later in the night defendant came home. He walked into the bedroom, turned on the light and saw Kooiker, nude, standing near the bed. Defendant took out a loaded pistol, cocked it, pointed it at Kooiker, and ordered him to "freeze". A loaded shotgun was leaning against a wall close to where Kooiker was standing. Defendant, after recognizing Kooiker, ordered him to go to a corner of the room and sit down, and Kooiker did so. Then defendant, while standing about two steps from Kooiker, and holding the pistol at his side, began to interrogate Kooiker and his wife. Defendant approached Kooiker and struck him on the back of the head with the pistol. The pistol discharged and the bullet passed through Kooiker's skull and into his shoulder.

Defendant's wife called the Marshalltown hospital for an ambulance. A few minutes later, defendant called the hospital to give directions to the home. Shortly after the ambulance arrived, at about 3:45 a. m., sheriff's deputies came to the home, investigated the shooting and took defendant into custody. Kooiker was taken to the Marshalltown hospital and then almost immediately was returned to the ambulance to be moved to a Des Moines hospital. He died en route.

Defendant was tried on a county attorney's information charging him with second-degree murder. Convicted and sentenced on that charge, he now appeals.

He contends the trial court erred (1) in allowing his wife to be cross examined about his dating other women, (2) in allowing testimony about his pretrial assertion of the "husband-wife privilege", (3) in allowing an expert to testify in rebuttal regarding a test of the gun, (4) in overruling his exception to the court's instruction on malice aforethought, and (5) in overruling his

objection to a gun demonstration by the county attorney during final argument.

I. *The cross-examination ruling.* Defendant offered his wife's testimony in defense. On direct examination the following colloquy occurred:

Q. Mrs. Pepples, would you describe for us your marriage as it existed last fall? A. We were having a few problems last fall.

Q. What kind of problems? A. Financial problems.

Q. Did things improve or get worse as the fall progressed? A. It got worse as the fall progressed.

Q. Did you discuss with your husband the possibility of having your marriage dissolved? A. Yes, we did.

Q. Would you describe for me, please, what happened to your marriage in the month of November last year? A. Around the beginning of November, maybe the end of October, Jim decided it would be best if he moved out.

Q. Did he in fact do so? A. Yes, he did.

Q. Did anything precipitate his decision to leave? A. Yes.

Q. What? A. It was almost immediately the day of, or the day after that he lost a job working for the Northwestern Railroad that he had wanted very badly, and because of the financial pressures he was concerned about his ability to contribute to our support.

Q. And where did he move to? A. Boone.

Q. Who was he staying with over there? A. His mother.

Q. How often did you see your husband in the weeks and months that followed that move? A. At least two times a week.

Q. And were you able to resolve some of these problems? A. Yes.

Q. Can you tell me what happened? A. Well, he moved back in.

Q. When? A. Around the 1st of January.

Q. Do you know why he returned? A. Uhm—To live at home.

Her cross examination included the following exchange:

Q. When your husband went to live at Boone, do you know whether or not he was employed during that time? A. He was for a portion of it.

Q. Isn't it true, Mrs. Pepples, that during the period of your marriage and perhaps during the period of time when you were separated, that Mr. Pepples was dating other women?

MR. WARD: Object, Your Honor. I don't believe that question is relevant to any of the issues of this case.

THE COURT: Overruled.

A. Yes, he was.

Q. And you knew that, didn't you? A. Yes.

Defendant contends the trial court erred in overruling his objection to the county attorney's question about defendant's dating of other women.

■ The parties agree evidence is not relevant if it lacks probative value on an issue involved in the case. See *State v. Mathias,* 216 N.W.2d 319, 322 (Iowa 1974). An objection asserting lack of relevancy is sufficient to preserve error on that ground. *State v. Clay,* 213 N.W.2d 473, 477 (Iowa 1973).

■■ When, as here, the court overrules a specific objection, the objecting party is limited on appeal to reliance on the same ground. *State v. Winquist,* 247 N.W.2d 256, 259 (Iowa 1976). Moreover, we will uphold the challenged ruling if the specific objection could properly have been overruled on any theory. *State v. Kidd,* 239 N.W.2d 860, 864 (Iowa 1976).

The State contends the ruling should be sustained on the theory the evidence was relevant to combat defendant's claim that he killed Kooiker in a heat of passion engendered by genuine outrage at being cuckolded. We do not decide whether the court's ruling can be upheld on this basis.

■■ We uphold the ruling on the theory that defendant opened the door to the

challenged testimony by his interrogation of Karen Pepples about the parties' marital problems on direct examination. The applicable principle is stated in *Vine Street Corporation v. City of Council Bluffs*, 220 N.W.2d 860, 864 (Iowa 1974):

> The rule in Iowa is that when one party introduces inadmissible evidence, with or without objection, the trial court has discretion to allow the adversary to offer otherwise inadmissible evidence on the same subject when it is fairly responsive.

In his brief, defendant acknowledges reliance on the "natural tendency of jurors to empathize with a defendant who arrived home to find another man in bed with his wife * * *." The trial court reasonably may have believed the testimony of defendant's wife on direct examination was calculated to characterize the marriage in a way furthering this objective. Undoubtedly the testimony on cross examination was intended to make the jury less sympathetic with defendant. In these circumstances, the trial court may reasonably have thought the cross-examination testimony that the witness knew defendant dated other women was fairly responsive to the direct examination testimony which attributed the marital difficulties to economic stress.

Although the trial court would have acted well within its discretion in sustaining defendant's objection, we hold the court did not abuse its discretion in overruling it.

■ II. *Testimony about defendant's pretrial assertion of the "husband-wife privilege".* A deputy sheriff testified twice without objection that when he sought to question defendant and his wife at the scene of the homicide, defendant repeatedly told his wife not to talk to him. At a recess defendant moved in limine to prevent further inquiry along this line, and the court sustained the motion but cautioned defense counsel of his obligation to make timely objection.

However, on direct examination of defendant's wife, defense counsel elicited testimony to the same effect. She repeated this testimony, without objection, on cross examination. It was only when the county attorney asked, "Did your husband at any time, well, raise his voice to you and tell you to keep your mouth shut?" that defense counsel objected. Then, when the objection was overruled, the witness answered, "Not that I remember". In these circumstances, the court's ruling was not reversible error for two obvious reasons. The first is the fact defendant invited the inquiry by his similar inquiry on direct examination. See *State v. King*, 225 N.W.2d 337, 341 (Iowa 1975). The second is the fact the answer of the witness did not harm defendant.

However, this assignment of error is also based on a fundamental misconception regarding the "husband-wife privilege."

■ Defendant relies on § 622.7, The Code. By its terms, that statute provides, with exceptions not material here, that, "Neither the husband nor wife shall *in any case* be a witness against the other * *." This statute disqualifies one spouse from being used as a witness against the other at trial. *Lehigh Sewer Pipe & Tile Co. v. Gjellefald*, 205 Iowa 778, 218 N.W. 475 (1928). It does not affect the admissibility of evidence of pretrial interspousal communications.

■ The privilege regarding marital communications is provided in Code § 622.9. This provision would not assist defendant in his complaint about the deputy sheriff's testimony because it does not apply to testimony by third persons. Nor would it assist defendant in his objection to the cross examination of his wife if the communication occurred in the presence and hearing of a third person. See *Shepherd v. Pacific Mutual Life Insurance Company*, 230 Iowa 1304, 300 N.W. 556 (1941); McCormick on Evidence §§ 80, 82 (Second Ed. 1972). Moreover, the privilege is waived when the objecting spouse has earlier made a voluntary revelation of a material part of the communication. McCormick, supra, § 83 at 170.

We find no merit in this assignment of error.

■ III. *Rebuttal testimony regarding a test of the pistol.* Defendant testified he

did not think he had his finger on the trigger of the pistol when he struck Kooiker with it and it discharged. In response to a hypothetical question by defense counsel, he acknowledged that if the hammer would not fall unless the trigger were depressed with a finger, he would not insist his finger was not on the trigger when the weapon discharged.

Through rebuttal testimony of Darwin Chapman, a firearms expert with the state bureau of criminal investigation, the State sought to show the weapon would not discharge unless the trigger were squeezed by a finger. Defendant objected to Chapman's testimony on several grounds, and his objections were overruled. He assigns those rulings as error.

Chapman testified regarding his extensive background and training, including his study of mechanical functioning of firearms. He said he studied the trigger pull characteristics of defendant's pistol, examined its workings, and disassembled it to ascertain its mechanical condition. Then he reassembled it.

He was asked if he determined what the "trigger pull" of the weapon was. In objecting, defendant raised issues of competency, relevancy and foundation. After the court overruled the objection, Chapman testified that the better the condition of the parts connecting the trigger to the hammer the greater the force which is needed to pull the trigger. He said defendant's gun was nearly new, and the safety was in exceptionally good condition.

Chapman was asked if the pistol would discharge if used to strike someone on the head while loaded and cocked but without a finger on the trigger. Defendant objected on foundation grounds. When the court overruled the objection, Chapman said the pistol would not discharge under those circumstances. He was later asked whether it would make any difference what surface was struck. Defendant objected on the ground the answer would be irrelevant because speculative. The objection was overruled, and the witness said the nature of the surface would make no difference.

The qualifications of the witness were well established. The foundation for his expressions of opinion was thorough. The subject was relevant because it bore on the accuracy of defendant's description of the shooting. Chapman's testimony tended to impeach defendant's version of the event. The admissibility of opinion evidence in these circumstances was a matter within the trial court's discretion. *Ganrud v. Smith,* 206 N.W.2d 311 (Iowa 1973). That discretion was not abused here.

The trial court did not err in overruling defendant's objections on any of the grounds urged.

■ IV. *The instruction on malice aforethought.* Defendant excepted to the court's instruction authorizing the jury to infer malice aforethought from defendant's use of a deadly weapon. In its instruction the court told the jury the inference is not conclusive "but may be considered by you with all the evidence in the case, or lack of evidence, in determining whether or not the killing charged, if done by the defendant, was done with malice aforethought."

Defendant contends the instruction was erroneous because it did not inform the jury the defendant had no obligation to present evidence to refute the inference. We reject this contention for the same reasons we rejected the same contention in *State v. Lass,* 228 N.W.2d 758, 766–767 (Iowa 1975).

The court did not err in overruling defendant's exception to the instruction.

V. *The prosecutor's conduct during final argument.* During final argument, the county attorney sought to demonstrate to the jury that defendant's pistol would not fire unless a finger pulled the trigger. Keeping his finger off the trigger, he struck the weapon, which was cocked and unloaded, against the Code index about six times, progressively harder each time. The hammer did not fall. Defendant objected that the demonstration exceeded the scope of evidence at trial, and the court overruled the objection.

Defendant made additional objections in a post-verdict motion for new trial, but he

is limited here to the ground of his timely objection urged during the trial.

 Counsel have no right to create evidence during argument. They must confine themselves to analysis of the evidence. However, they are entitled to reasonable latitude in doing so. *State v. Phillips,* 226 N.W.2d 16, 19 (Iowa 1975). Counsel may also use visual aids to illustrate matters in evidence in aid of their analysis. *State v. Blyth,* 226 N.W.2d 250, 272 (Iowa 1975).

In addition, counsel may reasonably display exhibits which are in evidence. See, e. g., *People v. Gardner,* 147 Cal.App.2d 530, 542, 305 P.2d 614, 621–622 (1957); *Jenkins v. State,* Ind., 335 N.E.2d 215, 218 (1975); *Wood v. State,* 275 So.2d 87 (Miss. 1973); *State v. Barbour,* 28 N.C.App. 259, 220 S.E.2d 812 (1976). This includes the right to use such exhibits demonstratively so long as the demonstration is for illustrative purposes and does not constitute the creation of new evidence. See, e. g., *United States v. DiCanio,* 245 F.2d 713 (2 Cir. 1957); *People v. Freeman,* 107 Cal.App.2d 44, 236 P.2d 396 (1951); *People v. Mullen,* 115 Cal.App.2d 340, 252 P.2d 19 (1953); *State v. Roy,* 220 La. 1017, 58 So.2d 323 (1952); *State v. Bland,* 353 S.W.2d 584 (Mo. 1962); *Russell v. State,* 66 Neb. 497, 92 N.W. 751 (1902); cf. *State v. Mayfield,* 506 S.W.2d 363 (Mo.1974). Of course, illustrations and demonstrations, like verbal communication, must be kept within proper limits.

In the present case the pistol was part of the evidence in the case. Chapman had testified to its trigger-pull characteristics. The county attorney undoubtedly was attempting to illustrate Chapman's point by dramatizing it. Although this demonstration was technically within the scope of the evidence at trial, we do not approve it. The demonstration came too close to being new evidence buttressing Chapman's opinion.

Even though we disapprove what was done, we do not find an abuse of trial court discretion in overruling defendant's objection to it.

No reversible error appears.

AFFIRMED.

MASON, Justice (dissenting).

In Division I of the majority opinion the court considers defendant's contention the trial court erred in overruling his objection to the State's cross-examination of Mrs. Pepples and concludes the trial court acted within its discretion. I disagree because I believe the objection should have been sustained and that the court abused its discretion in ruling otherwise.

In Division V, the majority, although disapproving the prosecutor's demonstration during final argument, holds that it was technically within the scope of the evidence at trial. I disagree. I believe the demonstration constituted reversible error.

I therefore dissent.