## IN THE COURT OF APPEALS OF IOWA

No. 21-1301
Filed January 11, 2023

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**KEITH MICHAEL MOSS,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Hancock County, Gregg R. Rosenbladt, Judge.

A defendant appeals his convictions for second-degree sexual abuse.
**AFFIRMED.**

Nathan A. Olson and Christine E. Branstad of Branstad & Olson Law Office, Des Moines, for appellant.

Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Heard by Bower, C.J., and Greer and Badding, JJ.

**BADDING, Judge.**

Keith Moss appeals his convictions for sexually abusing his daughter when she was ten years old. Casting the case against him as weak because of inconsistencies in the child's retelling of the abuse, Moss claims the weight of the evidence is against the verdict. He also protests the court's denial of his request for an in-camera review of the child's cell phone, admission of subsequent bad acts against the child and drug use, and admission of testimony outside the minutes of testimony that he contends improperly bolstered the child's credibility. We affirm these mostly discretionary decisions.

## I. Background Facts and Proceedings

Moss has two daughters, both of whom live with their mother, her husband, and his son. Moss was absent for the first several years of his daughters' lives. Once he reappeared, Moss began having visitation with them every other weekend at his mother's house where he lived. Moss's visitation with the children continued through the spring of 2019 and into that summer, when the children's mother let Moss take them on an extended trip to Arizona. During that period of time, Moss's oldest daughter said that he sexually abused her three times.

The child first disclosed her father's abuse to an online friend she met on a cell phone app. She then shared a screenshot of that conversation with a "real life" friend at school. The disclosure eventually made its way to the child's mother in November 2019, who asked her if it was true. The child testified, "At first I lied to her, but then soon enough I told her the truth." She continued, "[S]ince I lied a bunch, technically, she wanted to make sure I was telling her the full truth, so eventually I just gave her the truth." The mother agreed that she "did not quite"

believe her daughter at first. She explained that because she "couldn't quite grasp the fact that her father could do this to her," she did not immediately call the police.

But within a few days of the child's conversation with her mother, the police did become involved, as did Kasey Christiansen, a child protective worker from the Iowa Department of Health and Human Services. Christiansen's investigation at first focused on the stepfather because it was reported that he was the alleged perpetrator. When she met with the child alone, Christiansen asked her who had abused her to ensure that she was safe. The child said it was "[h]er father, Keith." Christiansen arranged an interview for the child at a child advocacy center. Following that interview, the county sheriff asked an agent with the Iowa Division of Criminal Investigation for assistance with the investigation. The agent then conducted two interviews with Moss.

Because the initial report to the child protective worker named the stepfather as the alleged perpetrator, Moss had received a report from Christiansen saying the allegations were not founded as to the stepfather. So when the agent first met with him, Moss did not know that he was now the subject of the investigation. During the first interview, Moss told the agent that if his daughter "says something happened," he believes her. He then gave the agent details about the sleeping arrangements at his mother's house when the girls would visit. Moss said that he would usually give the children his bedroom and sleep on the couch. But sometimes, like when he was giving his daughters foot rubs in bed, he would fall asleep with them. Moss also confirmed that he took the girls on a vacation to Arizona the summer of 2019, and he admitted that he took some drugs while there.

These details fit with what Moss's oldest daughter testified that her father did to her three times. The first two times took place in March and April 2019 at her grandmother's house. On both occasions, the father slept in between the two children in his bedroom because the youngest "had a fear of the dark," and they also "liked when he would massage our feet." The first time the abuse happened, the oldest child said that she had fallen asleep but woke up when she felt Moss touching her breasts and vagina with his right hand. The same thing happened the next time, although that time, the child said Moss also "pulled out his [penis] and rubbed it on my butt, but it was over clothing." And he tried to push her head towards his penis, which she said was hard. The child testified the third time was in July on the children's trip to Arizona with Moss, their grandmother, and cousin. The oldest child testified that she again fell asleep in the same bed as her father and awoke to him touching her.

When confronted with these allegations in a second interview with the agent, Moss adamantly denied having sexually abused his daughter, even after watching a video of her from the child advocacy center detailing the abuse. He was arrested at the end of that interview and charged with two counts of sexual abuse in the second degree, in violation of Iowa Code sections 709.1, 709.3(2), and 903B.1 (2019), for the incidents that occurred in March and April 2019.

At trial, Moss's attorney confronted the child with certain inconsistencies between her testimony and prior descriptions of the abuse. He pointed out that at the child advocacy center, the child said that her father touched her with two hands during the first incident, not just one as she testified at trial. Moss's attorney also questioned the child about her statements at the interview that after the first

incident, she "got up, ran to the bathroom, and then went and started crying in" her grandmother's room. The child agreed that was not true.

Moss's attorney then turned to a TikTok video the child made. In the video, she is lip syncing along to a song called "I'm Yer Dad" by GRLwood. The caption of the video states: "#pov your daughter tries to tell you that her step dad cheated on you with your oldest daughter but you don't believe her." The child testified, "[i]t was a trend where we just talked about—well, POVs, which is point of view, and what it's like for other people. So I just did it for fun and I went on the trend." She said that "it was fictional for the most part" and that "I kind of felt it and it kind of reminded me of what my dad did to me, but I didn't mean to make the video for that. I just went by the trend." The child testified she used a stepfather in the caption to the video "because a lot of people were putting stepdad, not biological, so [she] just went with stepdad." She testified her stepfather has done nothing sexual to her and that it was Moss who sexually abused her.

Based in part on this TikTok video, Moss filed a motion in December 2020 for nontestimonial identification under Iowa Code chapter 810, seeking an in-camera review of the child's cell phone for exculpatory information. Moss followed that with a motion in January 2021 for the district court to issue a subpoena duces tecum requiring the child to produce her cell phone. Both motions came after the child had been deposed. The court denied the requests, finding that chapter 810 did not apply and "that examining the alleged victim's cell phone at this point would have large implications for her privacy, without having any real basis to believe that anything in particular exists or will be found of an exculpatory nature." The

court also denied Moss's motion in limine to exclude testimony about the third, uncharged sexual abuse in Arizona and his drug use while there.

Moss waived a jury and proceeded to a bench trial in May, after which the district court filed a written verdict finding him guilty on both counts. The court reasoned that its decision came down to an evaluation of who was more credible—the child or Moss. On that question, the court found the child's testimony was "more credible and believable" and that it "establishes the guilt of the defendant beyond a reasonable doubt. The [c]ourt is firmly convinced." Moss moved for new trial and in arrest of judgment, which the court denied. He was sentenced to an indeterminate term not to exceed twenty-five years on both counts, to be served concurrently. Moss appeals.

## II.     Analysis

### A.     Discovery of cell phone

We begin with Moss's claim that the district court "violated [his] constitutional rights and abused its discretion by denying the request for an in-camera review of" the child's cell phone.[1] "Pretrial discovery in criminal cases is generally controlled by either statute or court rule unless otherwise grounded in the constitution." *State v. Russell*, 897 N.W.2d 717, 733 (Iowa 2017). Moss has

---

[1] The State contests error preservation in part, arguing that while error was preserved on "Moss's claims regarding Iowa Code chapter 810 and the State's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963)," it was not preserved on his more general claim "that the district court violated his 'constitutional rights to exculpatory evidence.'" Based on our reading of Moss's brief, we find the latter claim is the same as his properly preserved challenge under *Brady*. So there is no error-preservation problem.

pursued the statutory and constitutional avenues as this case has progressed, though neither get him where he wants to go.

In district court, Moss tried to access the child's cell phone through a motion under Iowa Code section 810.2, which allows a "person arrested for or charged with an offense" to "request a district court judge to order a nontestimonial identification procedure."[2] He later supplemented that motion with a request for a subpoena duces tecum requiring the child to produce her cell phone. At the hearing on the motions, Moss told the court: "[T]his is not a fishing expedition, but evidence, rather, that goes towards credibility of the witness." The court found that reason did not fit with the purpose of the nontestimonial identification procedure, which is aimed at "physically identifying or ruling on the defendant as the person who committed the crime." Moss does not challenge that finding on appeal.

Having abandoned that avenue to the child's cell phone, Moss instead turns to the State's "affirmative duty to disclose exculpatory evidence" under *Brady*.[3] This includes impeachment evidence. *See DeSimone v. State*, 803 N.W.2d 97, 105 (Iowa 2011). But as the State points out, a *Brady* violation is premised on the fact that the State has possession or control over the material or favorable evidence and suppressed such evidence. *See id.* at 103–04. Neither the State, nor its investigative arms or agencies, had possession or control of the child's cell phone. Yet Moss argues the State had a "duty to learn of any favorable

---

[2] Those procedures include, but are not limited to, "identification by fingerprints, palm prints, footprints, measurements, hair strands, handwriting samples, voice samples, photographs, blood and saliva samples, ultraviolet or black-light examinations, paraffin tests, and lineups." Iowa Code § 810.1.

[3] Because of this claim's constitutional underpinnings, we review it de novo. *See Russell*, 897 N.W.2d at 724.

evidence known to others acting on the government's behalf." He asserts that because the State knew about the screenshot of the child's disclosure to her online friend[4] and the child's TikTok video, both of which came from her cell phone, the State had a duty to seize the phone to search for other favorable evidence. Our cases do not go that far.

While prosecutors "must seek to ensure that defendants receive a fair trial," a criminal prosecution "remains an adversarial process." *State v. Retterath*, 974 N.W.2d 93, 99 (Iowa 2022). So a "prosecutor's duty to ensure a fair trial doesn't mean that the State must work both sides of the case." *Id.* "The prosecutor has no duty to seek out exculpatory evidence." *Hamman v. State*, 324 N.W.2d 906, 914 (Iowa 1982). And the prosecution "bears no responsibility to volunteer information not in its possession and of which it is unaware." *Retterath*, 974 N.W.2d at 99 (citation omitted). "[W]hen evidence is equally accessible to the defendant and the State, the State is not required to produce it." *Id.*

Because the child's cell phone was not in the possession of the State, or others acting on its behalf, it was as equally accessible to Moss as it was to the

---

[4] The screenshot was not offered into evidence at Moss's trial, though it was attached to the State's minutes of testimony. Moss asked the court to take judicial notice of the screenshot at the hearing on his motions to produce the cell phone, and the court did so. We have considered the screenshot only as it relates to the court's ruling on those motions. In his brief, Moss argues that the screenshot says the child was "sexually abused by her stepfather ('dad') and stepbrother." But what it actually states is: "I got raped by my dad and my older cousins" and "[m]y brother also raped me. . . . Step brother." Because the child calls her stepfather "dad," Moss takes this screenshot to mean that the child was referring to her stepfather. But the child repeatedly testified at trial that it was Moss, her biological father, who sexually abused her.

State.  *See, e.g.*, *id.* at 100 (noting the State had "no better access" than the defendant to counseling records that the defendant sought).  "The State generally has no duty to obtain discovery not within the 'possession, custody or control' of the State or parties under the State's control to enable the defendant to impeach the State's witnesses."  *Id.* (citation omitted).  "That responsibility naturally resides with the defendant."  *Id.*  Our rules of criminal procedure "provide detailed provisions regarding discovery and disclosure of documents during discovery."  *Russell*, 897 N.W.2d at 725.  "There are provisions regarding mandatory and discretionary disclosure of documents and evidence."  *Id.*; *accord* Iowa R. Crim. P. 2.14.  And there are rules allowing a defendant to secure a subpoena duces tecum directing a witness who is testifying at trial or in a deposition "to bring with the witness any book, writing, or other thing under the witness's control which the witness is bound by law to produce as evidence."  Iowa R. Crim. P. 2.15(2); *accord id.* r. 2.13; *Russell*, 897 N.W.2d at 724–25.  Discovery is, however, "subject to reasonable regulation by the court."  *State v. Phillips*, No. 20-0369, 2021 WL 5106468, at *4 (Iowa Ct. App. Nov. 3, 2021); *accord* Iowa Rs. Crim. P. 2.14, 2.15(2); *Russell*, 897 N.W.2d at 725.

The problem is that while Moss sought a subpoena duces tecum for the child's cell phone after she was deposed, his motion requesting the subpoena did not cite any rules of criminal procedure that would allow him to do so.  His brief on appeal is similarly deficient.  Nowhere does Moss cite rules 2.13 or 2.15 in his brief, or claim the district court should have issued the subpoena under those rules.  And we cannot make these arguments for him.  *See Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [a party]

might have made and then search for legal authority and comb the record for facts to support such arguments.").  Instead, we must decide the issue as Moss has framed it on appeal—whether the district court "erred in not ordering the cell phone reviewed for exculpatory evidence" because of the State's "constitutional duties and obligations."  For the reasons detailed above, we conclude the answer is no.

## B.  Admission of Arizona sexual abuse and drug use

Moss next argues the district court should not have admitted evidence that he sexually abused the child in Arizona and did drugs while on vacation there.[5]  We review these claims for an abuse of discretion.  *State v. Rodriguez*, 636 N.W.2d 234, 239 (Iowa 2001).

### 1.  Arizona sexual abuse

Starting with the sexual-abuse evidence, Moss argues the Arizona "allegation is geographically distant," "never reported, investigated, charged, or otherwise substantiated."  As a result, he contends that it is irrelevant and unfairly prejudicial under Iowa Rule of Evidence 5.404(b).  We agree with the State that this issue is controlled by Iowa Code section 701.11(1) and our supreme court's decision in *State v. Reyes*, 744 N.W.2d 95, 100 (Iowa 2008) (considering section 701.11(1) even though it was not raised in or decided by the district court).

---

[5] Moss also claims the court abused its discretion in admitting Facebook messages between him and the child's mother because they were "irrelevant and unfairly prejudicial."  We agree with the State that Moss did not preserve error on this issue. His only objection to the messages at trial was a foundational one—"that the State has failed to lay the credibility that these statements were purely made by" Moss. *See* Iowa R. Evid. 5.901(a).  That is not the same claim he raises on appeal, so we need not consider it further.  *See State v. Pepples*, 250 N.W.2d 390, 393 (Iowa 1977) ("When, as here, the court overrules a specific objection, the objecting party is limited on appeal to reliance on the same ground.").

Section 701.11(1) provides that

> [i]n a criminal prosecution in which a defendant has been charged with sexual abuse, evidence of the defendant's commission of another sexual abuse is admissible and may be considered for its bearing on any matter for which the evidence is relevant. This evidence, though relevant, may be excluded if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. This evidence is not admissible unless the state presents clear proof of the commission of the prior act of sexual abuse.

On the first question of relevance, the court in *Reyes* concluded: "The existence of prior sexual abuse involving the same alleged perpetrator and victim . . . has relevance on the underlying criminal charge because it shows the nature of the relationship between the alleged perpetrator and the victim." 744 N.W.2d at 102. The challenged Arizona act involved Moss and his oldest daughter, the same victim of the underlying criminal charges. The evidence was therefore relevant under *Reyes*. That it occurred after the charged acts in Iowa rather than before "does not render the evidence less probative because it still bore on the nature of the relationship." *State v. Puffinbarger*, No. 06-0779, 2008 WL 508404, at *2 (Iowa Ct. App. Feb. 27, 2008); *accord State v. Munz*, 355 N.W.2d 576, 581 (Iowa 1984) ("[S]ubsequent acts are as probative as those prior to the date of the charged offense.").

The next question under section 701.11(1) is whether the evidence, even though relevant, should still be excluded because its "probative value is substantially outweighed by the danger of unfair prejudice." Iowa Code § 701.11(1). On this issue, Moss simply argues the "court failed to perform the necessary Iowa Code section 701.11 balancing." But that is not problematic

where, as here, the parties argued about the evidence's probative value versus the danger of unfair prejudice at the hearing on Moss's motion in limine. Since balancing was argued at the hearing, we can conclude the district court "necessarily considered the issue," even though it "did not expressly rule on the balancing issue in its oral denial." *Reyes*, 744 N.W.2d at 100.

With that said, we find no reason to distinguish the type of evidence offered here from the type found admissible under the balancing test in *Reyes*. *See Puffinbarger*, 2008 WL 508404, at *2. The child's testimony about the Arizona act was brief and similar to the evidence that supported the two underlying charges. *See id.* The act was also close in time to the other charged offenses and no more inflammatory than they were. *See Reyes*, 744 N.W.2d at 100 ("The evidence elicited at trial concerning the prior sexual assault was concise, direct, and noninflammatory, and of a nature similar to that in the underlying charge.").

As for the final statutory requirement of "clear proof," the child's direct testimony about the later act in Arizona is, "as a matter of law, . . . sufficient 'clear proof' to meet the code requirement." *Id.* at 101. For these reasons, we find the district court did not abuse its discretion in admitting evidence about the sexual abuse in Arizona.

### 2. Drug use

Moss next claims the district court erred in allowing evidence about his drug use in Arizona. He argues that because he was not charged with any crimes for that drug use, the evidence was "irrelevant and unfairly prejudicial under Iowa Rule of Evidence 5.404(b)." We disagree.

None of the witnesses at Moss's trial testified about his drug use. Instead, the evidence came in through the admission of the video of Moss's first interview with the agent from the division of criminal investigation. In that interview, Moss volunteered that he had used some drugs in Arizona while on vacation with his daughters. The court mentioned Moss's drug use in one sentence of its fourteen-page ruling, noting Moss admitted to the agent that "he used marijuana, mushrooms, and 'Molly'" while on vacation in Arizona with the children. After Moss moved for a new trial on that ground, the court clarified that it gave "little to no weight" to the evidence about Moss's drug use.

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. . . ." Iowa R. Evid. 5.103(1). "Thus, error in an evidentiary ruling that is harmless may not be a basis for relief on appeal." *State v. Parker*, 747 N.W.2d 196, 209 (Iowa 2008). Prejudice is presumed under this approach, unless the contrary is affirmatively established. *Id.* "When a nonconstitutional error is claimed, as in this case, the test is whether the rights of the objecting party have been injuriously affected by the error or whether the party has suffered a miscarriage of justice." *Id.* (cleaned up).

Neither is present here given the brief mention of Moss's drug use in the context of the whole trial, its dissimilarity from the charged crimes, the court's explicit statement that it gave the evidence "little to no weight," and the other evidence establishing Moss's guilt. *See id.* (considering a variety of circumstances in determining the existence of harmless error); *see also State v. Casady*, 491 N.W.2d 782, 786 (Iowa 1992) (holding prejudice from other-crimes evidence "is

reduced in the context of a bench trial"). We accordingly find any error in the admission of the evidence was harmless.

### C. Testimony outside the minutes and improper bolstering

Moss next claims the district court should not have allowed the child protective worker, Kasey Christiansen, to testify generally about her experience with child victims of sexual abuse. He argues that testimony was outside the scope of the minutes of testimony and improperly bolstered the child's credibility. We review both arguments for an abuse of discretion. *See State v. Hayes*, 532 N.W.2d 472, 476 (Iowa Ct. App. 1995); *State v. Payton*, 481 N.W.2d 325, 327 (Iowa 1992).

Iowa Rule of Criminal Procedure 2.5(3) "requires the State, upon filing a trial information, to provide a defendant with 'a full and fair statement' of the expected testimony of each witness." *State v. Musso*, 398 N.W.2d 866, 867 (Iowa 1987). That said, "there is no requirement that the minutes of testimony provide a complete catalogue of witness testimony at trial, but only that the defense be placed on fair notice and not subject to surprise testimony." *State v. Shorter*, 893 N.W.2d 65, 81 (Iowa 2017). "We generally will not reverse on the ground of technical defects in procedure unless it appears in some way to have prejudiced the complaining party or deprived him or her of full opportunity to make defense to the charge presented in the indictment or information." *State v. Braun*, 495 N.W.2d 735, 741 (Iowa 1993). We agree with the State that there was no prejudice here.

We reach that conclusion because the district court's written ruling mentioned Christiansen only one time, and that was to note her role in the case as

the child protective worker who "participated in the investigation and arranged for the [child advocacy center] interview" of the child. The court did not discuss her testimony about her general experience with child victims of sexual abuse in its written verdict. Nor did it rely on any of those concepts in reaching its conclusions. In any event, and as the State points out, when Moss decided to waive a jury trial, the court warned Moss that he had "heard cases before where people have been evaluated at [child advocacy centers]. . . . and done trials before where" things like "delayed reporting and some of these other terms may come up." Moss decided to proceed with a bench trial anyway. And when he objected to the testimony at trial, Moss did not claim that it surprised him. *See Shorter*, 893 N.W.2d at 83 ("[A] defendant is not entitled to relief due to defective minutes under rule 2.5(3) when the defense is not surprised by the subsequent testimony."). Instead, his focus was on whether it improperly bolstered the credibility of the child, an issue we turn to next.

Moss argues that "Christiansen's testimony amounted to improper bolstering," because she testified that children tend to delay reporting sexual abuse and their memories of the abuse can run together. But Christiansen did not refer to Moss's daughter specifically, nor did she link any of the common tendencies she testified about to her. *See State v. Sousley*, No. 19-1103, 2020 WL 5650756, at *5 (Iowa Ct. App. Sept. 23, 2020). As a result, we do not find the district court abused its discretion in allowing her testimony. *See State v. Leedom*, 938 N.W.2d 177, 192 (Iowa 2020) ("Experts may express general opinions but may not directly comment on the veracity of the child victim."); *see also Payton*, 481 N.W.2d at 327 (allowing expert testimony to explain why child victims of sexual abuse may

delay reporting the abuse, without testifying specifically about the victim in that case).

### D.    Weight of the evidence

We finally come to Moss's claim that the verdict was against the weight of the evidence.  Moss's argument is focused entirely on the child's credibility and "inconsistent stories."  *Cf. State v. Archibald*, No. 17-1365, 2018 WL 4923005, at *1 (Iowa Ct. App. Oct. 10, 2018) (noting that in reviewing a ruling on the weight of the evidence, "[w]e do not sit to judge the credibility of witnesses nor to reweigh the evidence").  He highlights the screenshot that started this case, which he contends refers to the child's stepfather; the mother's initial disbelief of the child's allegations; the child's TikTok video; and minor discrepancies in the child's testimony, including whether her father used one hand or two to sexually abuse her and whether she ran into her grandmother's room to cry after the abuse.

Because Moss chose to have a bench trial, we have the benefit of the district court's credibility assessments in its written verdict.  And those assessments were strongly in the child's favor, with the court finding the child's

> testimony was clear and consistent.  Her testimony was very detailed.  She responded appropriately to questions and answered matter of factly.  [The child] appears to be intelligent and mature for her age and to possess a good memory.  Her demeanor was serious and appropriate.

The court further found the child had

> no apparent vested interest in the trial. . . .  There is no real motive here for [the child] to testify falsely, and there is no apparent benefit or gain for doing so. . . .  She confided in someone she could trust and the information was reported eventually through appropriate channels.  The Court found [the child] to have candor.  She appeared to have no motive of revenge nor did she appear to enjoy testifying

against her father. The Court finds her testimony to be credible and consistent.

Beyond these credibility findings, the court's written verdict was thorough with a careful review of each witness's testimony. Contrary to Moss's arguments otherwise, the court did not ignore any critical piece of evidence in reaching its verdict, as it specifically mentioned the TikTok video, the mother's view of the child's credibility, and the minor inconsistencies in the child's testimony. *See State v. Grant*, 722 N.W.2d 645, 648–49 (Iowa 2006) ("The granting of a new trial based on the conclusion that a verdict is against the weight of the evidence is reserved for those situations in which there is reason to believe that critical evidence has been ignored in the fact-finding process."). The court did not find any of that evidence affected its view of the child's credibility, explaining in its ruling on Moss's motion for a new trial:

> The Court did not and does not find that [the child] made false and inconsistent statements of a material nature. [The child] testified under oath. She was cross-examined regarding any possible inconsistent statements. The Court found [the child's] testimony to be credible. . . . The Court found and continues to find that [the child] provided essentially consistent statements through discovery, and in direct and cross-examination while under oath.

The district court had wide discretion in deciding the motion for new trial based on a weight-of-the-evidence argument. *See State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). Such motions should be granted only in exceptional circumstances. *See State v. Ary*, 877 N.W.2d 686, 705 (Iowa 2016). We find no abuse of the court's discretion or any exceptional circumstances that would warrant a new trial. The court's ruling denying Moss's motion is affirmed.

**AFFIRMED.**