James Edward LAYMON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A-18073.

Court of Criminal Appeals of Oklahoma.

Aug. 30, 1973.

Rehearing Denied Sept. 14, 1973.

Mary E. Bane, Enid, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., Linda Frye, Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

Appellant, James Edward Laymon, hereinafter referred to as defendant, was charged and convicted of Murder While in the Commission of a Felony in the District Court of Bryan County, Case No. CRF–72–67. His punishment was fixed at life imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

Because the record reveals an error on the part of the court below which requires this Court to remand this case to the trial court for a new trial, we find it unnecessary to discuss other errors. In order to fully understand the reversible error made in instructing the jury, it is necessary to recount in some detail the events surrounding the murder of Carl Hart, for which the defendant has been convicted.

The State's evidence consisted of a properly admitted confession made by the defendant two days after the shooting death of Carl Hart and the testimony of several witnesses who corroborated the facts substantially as the defendant described. The exception to the above statement is the evidence of the series of events taking place around 10:30 p.m. on May 21, 1972, behind Easter's Cafe in Bokchito, Oklahoma, where the shooting occurred. The defendant is the only person having personal knowledge of these events, his confession is the only account of such events and it stands uncontroverted. The circumstances surrounding the murder are substantially as follows: On the afternoon and evening of May 21, the defendant had been drinking at various places in Durant, Oklahoma. From Durant, the defendant traveled to Bokchito, Oklahoma, where he continued drinking until approximately 10:00 p. m. He was seen at that time driving a two-tone, green, 1961 Ford in the direction of his father's house. The defendant, in his confession taken on May 23, stated that he broke into his father's house and took a shotgun. It was established by other testimony that the gun that shot Carl Hart was the same kind of gun that the defendant had taken from his father's house and was subsequently found on May 23 in the trunk of the defendant's car. Defendant further confessed to having left his father's house and walking to the back of Easter's Cafe with the intention of robbing the cafe. The defendant then related the only account of what happened at that point in time. Defendant stated that he stood at the back of the cafe considering his actions and had decided to go home when the back door to the cafe opened and the defendant "jumped behind the corner." (Tr. 321) Then, according to the defendant, the door closed. The testimony of the waitresses in the cafe established that Carl Hart had left the cafe and then immediately returned to pay his forgotten bill. The defendant said that as he started to leave again, the door opened a second time and, "I just swung around, right quick, and seen Carl Hart standing there, and I shot." (Tr. 321) Defendant stated that at that point he just ran. A passerby in a car testified to hearing a shot and seeing a person wearing a white T-shirt and blue jeans and carrying a rifle running across the road and behind a building across from Easter's Cafe. A drinking companion then established that the defendant was wearing a white T-shirt and blue jeans on the night in question. In addition the defendant's brother-in-law testified that the defendant arrived at his home at approximately 11:00 the night of the 21st and reported that Mr. Hart had been shot and informed his brother-in-law that he had been near the cafe and had removed his shirt because he feared being accused of the shooting. The defendant, in his confession, also told of this visit to his brother-in-law's house in Durant. Defendant also related that on the 22nd of May he had hidden the shotgun at his grandmother's place in Durant and thrown away the empty shell there. One of the investigating officers testified that he had

found the shell as a result of a search in the area defendant had indicated. Defendant stated that he later retrieved the shotgun and placed it in the trunk of his car where it was found on the 23rd by Officers Brimage and Jacobson. On the 23rd of May the defendant was questioned by Officers Brimage, Jacobson annd Jones at the Ardmore Police Station where the defendant made his confession which was at that time tape recorded. Defendant was informed of his constitutional rights and acknowledged, on tape, that he understood and waived them.

In Tarter v. State, Okl.Cr., 359 P.2d 596 (1961), also a murder case, the Court quoted with approval from the Court's syllabi in Welborn v. State, 70 Okl.Cr. 97, 105 P. 2d 187, wherein this Court in Syllabus 1 said:

> "In a prosecution for murder, the court should instruct the jury on the law of each degree of homicide which the evidence tends to prove, whether it be requested on the part of the defendant or not; and it is the duty of the court to decide, as a matter of law, whether there is any evidence that would tend to reduce the degree of the offense to manslaughter in the first degree."

The court in *Tarter,* supra, further stated:

> "In fact, we have gone so far as to hold in such situations the trial courts should give the defendant the benefit of any doubt which the evidence may suggest, and instruct the jury on the law of each degree which the evidence tends to prove, whether requested or not it is the trial court's duty so to do."

And again in the case of Myers v. State, Okl.Cr., 480 P.2d 950 (1969) in dealing with a murder case said:

> "In the [sic] charging the jury, it is the duty of the court to state to them all the matters of law which it thinks necessary for their information. It is also the duty of the court, particularly in a prosecution for murder, to instruct upon the law applicable to the case whether requested or not; . . ."

 In the case before us the evidence clearly tends to prove either the lesser degree of Homicide, to-wit: Manslaughter in the First Degree as defined in 21 O.S. 1971, § 711, or Murder as defined in 21 O.S. 1971, § 701(1). The court therefore committed reversible error when it did not instruct on the lesser degree of Homicide, Manslaughter in the First Degree. The only instruction given by the court on Homicide was an instruction on Felony Murder. However, as is apparent from the circumstances surrounding this shooting, the evidence strongly suggests other forms of Homicide.

 The court must allow the jury to assume its rightful duty; that of judging the facts of the case. In order to perform this duty properly, the jury must be given all the appropriate law applying to the case. The court in failing to instruct "the law of each degree of homicide which the evidence tends to prove . . ." (*Tarter,* supra,) in effect deprived the defendant of a trial by jury. It is therefore the judgment of this court that the case be remanded to the trial court for a new trial in conformity to the foregoing opinion.

For all the above and foregoing reasons, this case is remanded to the trial court of Bryan County for a new trial in conformity with the foregoing opinion.

BLISS, P. J., and BRETT, J., concur.