Richmond SANDERS, a/k/a Richard
Sanders, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–431.

Court of Criminal Appeals of Oklahoma.

Nov. 3, 1976.

Stephen Jones, Jones & Gungoll, Enid, Sylvia Marks-Barnett, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Frank Muret, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Presiding Judge:

The appellant, Richard Sanders, hereinafter referred to as the defendant, was charged, tried and convicted by jury trial in the District Court, Oklahoma County, Case No. CRF–74–3170, with the offense of Murder in the First Degree in violation of 21 O.S.Supp.1973, § 701.1. His punishment was fixed at death. From said judgment and sentence and death warrant, an automatic appeal has been perfected to this Court.

The testimony as presented at trial was revealed that on the night of September 6, 1974, at approximately 11:15 p. m., the decedent, Bobby Joe Martin and his brother Jack Martin entered the Black Caesar's Club on North Walnut Street in Oklahoma City. They ordered a beer, and after playing a game of pool, sat down to drink the beer. The defendant approached the two men, pulled a pistol out of his coat pocket, pointed it at Bobby Joe Martin, and said "I am going to kill you," and "I don't like white folks no way." Mr. L. D. Pete, the manager of the club, rushed over to the three men. His wife, the owner of the club, came from the kitchen and said "we ain't going to have that in here," whereupon the defendant dropped the pistol to his side and started toward the door. As he went out, the defendant commented to the two Martin brothers "I will get you when you come outside." Neither Mr. Pete nor Mrs. Pete were concerned over the incident because they thought the defendant was probably drunk.

The Martin Brothers left Black Caesar's and walked across the street to the Jungle Club. After the two men drank some beer, they left the Jungle Club around 1:00 a. m. As they walked out of the club, they saw several men standing up against the outside wall of the establishment, one of whom Jack Martin recognized as the defendant by his maroon sport's jacket. The defendant approached them pointing a gun at them. Several men standing behind the Martins demanded their money. Upon refusing, Jack Martin was hit from behind, which caused him to wheel around. Several shots were fired and Bobby Joe Martin was hit in the neck by one bullet. The brothers were robbed of $32.00 and a gold watch, and Bobby Joe was fatally wounded.

On the afternoon of September 7, 1974, after receiving an anonymous tip at the Jungle Club, Officers Ronnie Conners and Shirley Cox, arrested the defendant on Northeast 8th Street, Oklahoma City. The defendant had a wine colored coat thrown over his shoulder at the time he was arrested, and he had $20.00 on his person. The arresting officers also took possession of a small gun loaded with six live rounds of ammunition.

On September 15, 1974, Bobby Joe Martin died at University Hospital in Oklahoma City. He had been kept alive since late evening of September 7, 1974, by artificial means. Dr. Thomas Howard III and Dr. Tommy Hewlett determined the cause of death to have been complication of the gunshot wound received in the incident on September 7, 1974.

Ray Lambert, a Firearms Expert, tested the bullet taken from the decedent's body

and a bullet taken from the leg of a bystander to the incident, and compared them to the gun found on the defendant. Because of the imprecise design of the gun, his ballistics tests were inconclusive. However, the bullets examined were from the same caliber as the defendant's gun, and the two bullets had similar markings.

The defendant testified on his own behalf and denied the conversation with the Martin brothers. He did not see any fight, nor took part in any robbery or shooting on September 7, 1974. He also denied having a pistol in his possession on the night in question.

Because of the nature of the defendant's first five assignments of error, the sixth and seventh assignments of error will be considered first.

As his sixth assignment of error, the defendant contends that the evidence was insufficient to sustain a conviction of murder in the first degree.

■ The defendant was convicted of Murder in the First Degree under 21 O.S. Supp.1973, § 701.1. The essential elements of the crime charged are: (1) a homicide; (2) perpetrated without authority of law; (3) perpetrated with a premeditated design to effect the death of the person killed; (4) perpetrated during the commission of an armed robbery.

The defendant does not quarrel with the fact of the killing of Bobby Joe Martin, or with the fact that a robbery was committed. Indeed, the uncontradicted testimony of Jack Martin, the brother of the deceased, established that the killing took place during an armed robbery of their persons. The defendant does question whether there was sufficient proof of premeditation or whether there was sufficient evidence to link him to the offenses committed.

This Court has held on numerous occasions, that where there is a direct conflict in the evidence or it is such that different inferences may be properly drawn, the jury's determination will not be interfered with on the grounds that the evidence is insufficient to sustain the conviction. Moreover, this Court has held many times that where there is competent evidence in the record from which the jury might reasonably conclude that the defendant is guilty, the case will not be reversed because of the insufficiency of the evidence. See, *Williams v. State,* Okl.Cr., 373 P.2d 91 (1962); *Brewer v. State,* Okl.Cr., 452 P.2d 597 (1969), and *Thompson v. State,* Okl.Cr., 467 P.2d 523 (1970).

While much of the evidence in this case is circumstantial, this Court has often held that when circumstantial evidence is relied upon to prove the crime, it is not required that the circumstances proved shall exclude all possibility of innocence, but that reasonable inferences may be drawn therefrom with the same probative effect as direct testimony. See, *Logan v. State,* Okl. Cr., 493 P.2d 842 (1972), and *Jones v. State,* Okl.Cr., 523 P.2d 1126 (1974).

■ In the instant case, Jack Martin and the club manager testified to the threats at gun point made on the life of Bobby Joe Martin by the defendant. The eyewitness to the robbery, Jack Martin, testified that the defendant was present at the scene of the robbery and again pointed the gun at Bobby Joe Martin. Despite the fact that there is no direct evidence that the defendant pulled the trigger, there is sufficient circumstantial evidence to show that he had the only gun at the scene of the robbery and that Bobby Joe died as a result of a gunshot wound received in a struggle during the course of the robbery. While the defendant may not have actually taken property from the Martin brothers, one who aids or assists in the commission of a felony must be prosecuted and punished as the principal felon. See, 22 O.S. 1971, § 432.

The question next becomes whether the evidence established premeditation. In 21 O.S.1971, § 703, we find that:

"A design to effect death sufficient to constitute murder may be formed in-

stantly before committing the act by which it is carried into execution."

A companion statute, 21 O.S.1971, § 702 states:

"A design to effect death is inferred from the fact of killing, unless the circumstances raise a reasonable doubt whether such design existed."

■ The evidence reasonably proved that the defendant threatened the life of Bobby Joe Martin, that he had a gun in his possession, and that he pointed it at the decedent on two occasions, the last time being a moment before the shooting. Generally, a person is presumed to know and intend all the natural, probable, and usual consequences of his act. See, *Schmitt v. State*, 57 Okl.Cr. 102, 47 P.2d 199 (1935), and *Andrews v. State*, Okl.Cr., 455 P.2d 741 (1969).

We have carefully examined the record and for the reasons stated, find no merit in the defendant's contentions.

The defendant assigns as his seventh proposition, that it was error for the trial court to refuse to instruct the jury on the lesser included offenses, Murder in Second Degree, Manslaughter in the First Degree, and Manslaughter in the Second Degree.

Title 21 Oklahoma Statutes, Supp.1973, Section 701.3 states in part:

"In a jury trial for murder in the first degree, nothing in this section shall preclude the trial judge from instructing the jury regarding lesser and included offenses and lesser degrees of homicide if the evidence warrants such instructions; but in every instance where an instruction authorizes the jury to consider lesser and included offenses and lesser degrees of homicide, the judge shall state into the record his reasons for giving the instruction based upon the evidence adduced at trial."

■ It is within the trial court's discretion and responsibility to consider the evidence and to determine whether other such evidence exists to warrant instructions of a lesser degree. See, *Sharp v. State*, Okl. Cr., 407 P.2d 593 (1965). Therefore, the question on appeal is whether the trial court abused its discretion.

The pertinent part of 21 O.S.Supp.1973, § 701.2 is as follows:

"Homicide is murder in the second degree in the following cases:

"1. When perpetrated without authority of law, and with a premeditated design to effect the death of a person, or of any other human being, but by an act not enumerated in the preceding section;

"* * *

"3. When perpetrated without any design to effect death by a person engaged in the commission of any felony other than the felonious acts set out in Section 1 of this act."

■ Armed Robbery is specifically enumerated in Section 701.1 under which the defendant was convicted. The evidence of the robbery and the shooting in the present case as presented by the brother of the decedent, stood uncontradicted. Later testimony established that the death of Bobby Joe Martin resulted from the gunshot wound. Because of the wording of the statute describing murder in the first degree and murder in the second degree, the evidence in the instant case if believed, would only sustain a conviction of murder in the first degree. See, *Murray v. State*, Okl.Cr., 528 P.2d 739 (1974). Therefore, the trial court did not err in refusing to instruct on Murder in the Second Degree.

■ We now address ourselves to the argument that the defendant was entitled to the instruction on the lesser included offense of Manslaughter in the First Degree and Manslaughter in the Second Degree. As this Court has stated numerous times:

"The refusal to give manslaughter instructions is not error if there is no evidence to reduce the degree of the crime from murder to manslaughter."

See, *Newby v. State*, 17 Okl.Cr. 291, 188 P. 124 (1920), and *Harrison v. State*, Okl.Cr., 461 P.2d 1007 (1969).

Further, in *Newby,* supra, the Court held:

" 'When a defendant, who has a right of election as to several defenses, takes the stand as a witness and makes such admissions as to render every theory of defense unavailable save one, he will be deemed to have elected that one.' "

In the case at bar, the defendant's testimony is consistent with only the theory, that he did not kill the deceased. Neither the State nor the defendant introduced evidence that tended to prove a reduced degree of homicide. There was no hint of anything to excuse or to justify the killing nor was there any evidence introduced to suggest culpable negligence. In fact the defendant was certain that he had nothing to do with the killing. The issues thus presented leave no middle ground. The defendant is either guilty of murder in the first degree or nothing at all.

We have carefully examined the record and find no abuse of discretion in the refusal of the trial court to instruct the jury as to manslaughter. Thus, the defendant's seventh assignment of error is without merit.

As his final assignment of error, the defendant challenges the Constitutionality of imposing a mandatory death penalty on persons convicted of Murder in the First Degree under 21 O.S.Supp.1973, § 701.1. After the defendant's conviction, this statute was declared unconstitutional by the United States Supreme Court. In *Riggs v. State,* Okl.Cr. (1976), this Court considered the cases of *Justus v. State,* Okl.Cr., 542 P.2d 598 (1975), and *Williams v. State,* Okl.Cr., 542 P.2d 554 (1975). The *Justus* case holding was vacated insofar as it left undisturbed the death sentence, and the *Williams* case was overruled as to its holdings that 21 O.S.Supp.1973, §§ 701.5 and 701.6 were unconstitutional. Because of the nature of the defendant's first five assignments of error, the *Riggs* case has rendered their effect moot insofar as they involve questions concerning the *Williams*

and *Justus* cases. However, some issues were left unresolved by the *Riggs* case, and we will now consider these assignments of error in order.

The defendant's first and second assignments of error involve the case of *Justus v. State,* supra, which set the Oklahoma Standard for qualifying a jury under the 1973 Murder Statute. The defendant contends that this standard violates the Sixth and Fourteenth Amendments to the United States Constitution and should be overruled.

■ We have carefully reviewed the voir dire examination in this case and have observed that the selection of the jury conformed to the *Justus* standard, because the mandatory death penalty is no longer constitutional in Oklahoma, we find no compelling reason to now overrule this standard.

In his third assignment of error, the defendant contends that the method used in selection of the jury resulted in its being necessarily biased in favor of conviction.

This same contention was rejected in both *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) and *United States ex rel. Townsend v. Twomey,* 452 F.2d 350 (Ill.1972), cases which the defendant referred to. The defendant further draws attention to articles and statistical studies, some of which were found to be too tentative and fragmentary by the Court in the *Witherspoon* case. In *Fowler v. State,* Okl.Cr., 512 P.2d 238 (1973), the Court rejected the argument that the jury was conviction prone, absent evidence to show that the jury was biased in any manner.

In the case at bar, the jury was not shown to be conviction prone, and this contention is found to be without merit.

The defendant contends as his fourth assignment of error, that the proper inquiry to determine the impartiality of the veniremen even in death penalty cases, is whether the venireman can lay his attitudes and

beliefs aside and render a verdict based on the evidence.

The defendant directs attention to *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L. Ed.2d 751 (1961). This case is not applicable because it dealt with preconception of the defendant's guilt in the minds of those questioned in the voir dire examination. Many of those examined had formed opinions as to the defendant's guilt due to extensive coverage of the crime by the news media. In that case, the United States Supreme Court stated:

"Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular test and procedures and procedure is not chained to ancient artificial formula."

After a careful examination of the voir dire in the instant case, we conclude that the standards as set forth in *Justus* were met. In qualifying a jury in a capital case, under the *Justus* standard the appropriate basis for challenge may be for implied or actual bias. Title 22 Oklahoma Statutes, 1971, Section 660 provides in part:

"A challenge for implied bias may be taken for all or any of the following cases, . . .

" * * *

"8. If the offense charged be punishable with death, the entertaining of such conscientious opinions as would preclude his finding the defendant guilty of, in which case he shall neither be permitted nor compelled to serve as a juror."

In the *Justus* case the Court concluded that:

". . . the prosecutor utilized a more appropriate approach, i. e., inquiry for a determination as to whether the veniremen could assess the death penalty were the State to prove the defendant guilty of the offense charged beyond a reasonable doubt. The prosecutor could, however, have appropriately inquired further as to whether the mandatory assessment

of such punishment upon conviction would prevent the veniremen from standing indifferent between the State and the defendant and the deliberation of their verdict according to the law and the evidence. . . . the pertinent voir dire inquiry is whether in view thereof, the veniremen can deliberate upon the evidence impartially under the law and assess such punishment should guilt be established beyond a reasonable doubt."

In the case at bar, proper inquiry was made to determine the impartiality of the veniremen and therefore, we find this assignment of error to be without consequence.

■ The defendant contends as his fifth assignment of error, that the trial court erred in allowing and participating in the voir dire inquiry regarding the death penalty because as to murder in the first degree, punishment is not within the scope of the jury's function.

■ The defendant admits that he made no objection to such inquiry but it nevertheless warrants consideration. In this situation we could dispose of this assignment of error under the familiar rule often enunciated by this Court, that if proper objections were not made during the course of the trial, the defendant is deemed to have waived any right to raise his objection on appeal. See, *Gee v. State,* Okl.Cr., 538 P.2d 1102 (1975). Furthermore, the defendant's premise that the jury under 21 O.S.Supp.1973, § 701.1 has the sole function of deciding the question of guilt or innocence, and consequently the sentencing is not a consideration for the jury, is clearly without support in Oklahoma. None of the authorities cited by the defendant involve the mandatory death penalty imposed by 21 O.S.Supp.1973, § 701.3 which states in part:

"Every person convicted of murder in the first degree shall suffer death. In the case of a jury trial, the jury shall determine only whether the defendant is guilty or not guilty of murder in the

first degree and upon a finding of guilty shall so indicate on their verdict and state affirmatively in their verdict that the defendant shall suffer death . . ."

Moreover, 22 O.S.1971, § 926 requires that if a jury assess and declare punishment in their verdict within the limits fixed by law, the trial court shall render judgment according to the verdict. These statutes, taken together, established that the jury is to impose the punishment in the case of murder in the first degree as it is fixed by law. As stated previously, in the *Justus* case, it is permissible for the voir dire proceedings to include inquiry about the death penalty to ascertain the ability of the jurors to follow the law and assess the required penalty. Therefore the fifth assignment of error is without merit.

For all the reasons set out above and from a consideration of the record as a whole, we find that there was no substantial error and that the defendant received a fair and impartial trial. However, in light of the *Riggs* case, the sentence of the defendant is MODIFIED TO LIFE IMPRISONMENT.

BUSSEY and BLISS, JJ., concur.